ASH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Abdul Wahab Adeli, et al.,<br>Petitioners,<br>v.<br>Eric Rokosky, et al.,<br>Respondents. | No. CV-26-01949-PHX-DJH (ASB)<br>**ORDER**<br>**and**<br>**ORDER TO SHOW CAUSE** |

Yet, again, this Court must expend its limited resources to reiterate that which is clearly spelled out in its prior Orders to Respondents and their presumed learned counsel.[1] On March 20, 2026, Petitioners—a group of nine individuals from various countries, all of whom have final orders of removal but who also all have been granted withholding of removal—filed a petition challenging their ongoing detention under 28 U.S.C. § 2241 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1). On March 24, 2026, the Court Ordered Respondents to show cause why the Petition should not be granted. (Doc. 4). After substantial briefing, Respondents conceded that Petitioners Adeli, Etsang, Norouzi, and Ghadami were entitled to relief, and they were released from custody. (Docs. 21, 33, 60, 63). By Order dated June 29, 2026, the Court determined that the remaining Petitioners were also entitled to relief because there was no evidence to support that their lawful

[1] To be clear, the Court, in referring to Respondents, includes counsel who have entered a notice of appearance and remain active in this case.

removals were likely to occur in the reasonably foreseeable future, and ordered that they also be released from custody. (Doc. 69). Notably, the Court also found that Respondents' attempts during the course of this case to remove Petitioners Lincura and Madadi to third countries without giving them notice or a meaningful opportunity to contest such removal violated their due process rights. (*Id.*). The Court entered temporary restraining orders prohibiting Petitioners Lincura's and Madadi's removal to third countries without due process until they were released from custody. (Docs. 38, 58, 66, 69). Judgment was entered June 29, 2026, and the last of the Petitioners were released from custody by July 1, 2026. (Docs. 70, 71).

Barely two weeks later, on July 17, 2026, Respondents re-detained **Petitioner Dima**. (Doc. 72). On July 30, 2026, Petitioner Dima was shackled and placed on a plane in Texas, "without being told 'what country [he] would land in.'" (Doc. 72-1 at 4). After sitting in the plane for several hours, Petitioner was taken off the plane "right before the plane took off." (*Id.*). Petitioner would later learn that the plane was bound for the Central African Republic (CAR). (*Id.*). On September 17, 2026, Petitioner Dima was again released from custody. (Doc. 77).

Meanwhile, on August 13, 2026, **Petitioner Njukeng** was also re-detained by Respondents. (Doc. 72). Petitioner Njukeng has been told that Respondents intend to remove him to Equatorial Guinea. (*Id.* at 7). Subsequently, Petitioner Njukeng's immigration proceedings have been reopened, and he is scheduled for an asylum hearing in October. (Doc. 77-1 at 5). Thus, Petitioner Njukeng "is not scheduled for removal," but nevertheless remains detained. (*Id.*).

Finally, on September 21, 2026, Respondents re-detained **Petitioner Etsang**. (*Id.* at 2). Petitioner Etsang states that she was told she was re-detained "because the BIA dismissed her appeal on September 17." (*Id.* at 3). However, "the BIA's portal shows that [Petitioner Etsang's] appeal is still pending, [] no decision has issued," and Petitioner Etsang's counsel are unaware of any decision from the BIA. (*Id.* at 3-4).[2] Petitioner Etsang

[2] It is also not clear what this decision is, or what effect—if any—it has on the grant

has been told that "ICE is seeking to remove [her] to a third country," but have not identified that country. (*Id.* at 4).

As such, on August 14, 2026, Petitioners moved under Rule 60 to reopen these proceedings, and sought an injunction prohibiting their removal to a third country without first being provided notice and a meaningful opportunity to contest any removal. (Doc. 72). The Court ordered briefing from the parties, and the motion is now fully briefed. (Docs. 75, 76).

Respondents' end-run around this Court's June 29, 2026 Order has frustrated the relief granted by this Court and constitutes an "extraordinary circumstance" justifying reopening this matter. **Accordingly, the Court hereby grants Petitioners' Motion to Reopen, amends the judgment to enjoin the removal of ANY of the Petitioners to ANY third country without notice and a meaningful opportunity to contest that removal, and orders Respondents to show cause why this Court should not order that Petitioners Njukeng and Etsang be immediately released from custody**.

## I. Discussion

### A. Respondents Actions Justify Relief Under Rule 60

Petitioners seek to reopen this matter pursuant to Rule 60(b)(6). Rule 60(b)(6) allows the Court to set aside a judgment for " any other reason that justifies relief," when none of the other provisions apply. Fed. R. Civ. P. 60(b)(6); *Kemp v. United States*, 596 U.S. 528, 533 (2022). "[A] party merits relief under Rule 60(b)(6) if he demonstrates extraordinary circumstances which prevented or rendered him unable to prosecute his case." *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) (cleaned up). To show extraordinary circumstances, the party must "demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." *Id.* Rule 60(b)(6) has been "used sparingly as an equitable remedy to prevent manifest injustice" and should only be used when

---

of withholding of removal that Petitioner Etsang previously received. (*See* Doc. 1 at 20-21).

"extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

Respondents argue that no "extraordinary circumstances" are present here warranting invocation of Rule 60(b)(6). (Doc. 75). Respondents assert that both Petitioners Dima and Njukeng were able to file habeas corpus petitions in their respective districts of confinement, and both "have received indefinite stays of removal from those courts." (*Id.* at 2). Further, Respondents assert that Petitioner Dima was "provided a reasonable fear screening"—"the exact process that he claims to have been denied"—and any fears of imminent harm thus "remain speculative." (*Id.* at 2-3). These arguments are unsupported and border on disingenuous.

First, it is settled that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply ... for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (citing *Kossov v. I.N.S.*, 132 F.3d 405, 408–09 (7th Cir. 1998)); *see also Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.") (citing *Andriasian*, 180 F.3d at 1041); *El Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004). The Court specifically discussed *Andriasian* in its June 29, 2026 Order, finding that removing Petitioners Madadi and Lincura to a third country without notice and an opportunity to contest that removal would violate their due process rights. (*See* Doc. 69 at 12-13) ("Removal to a country which Respondents alone have deemed safe, and to which Petitioner has no ability to contest, is insufficient under *Andriasian*."). Respondents do not contest that *Andriasian* is binding authority here, or that any attempt to remove Petitioners in violation of its requirements would violate their constitutional rights.

Nothing in the record supports that Respondents have honored *Andriasian*'s

mandate. First, the "reasonable fear screening" provided to Petitioner Dima was not provided until 11 days ***after*** Respondents had already attempted to remove him to the CAR. That Petitioner Dima was able to secure an emergency restraining order[3] preventing that removal does not cure Respondents' attempt. *Andriasian* places the burden on Respondents to comply with the Constitution, not on a petitioner to have the good fortune to overcome Respondents' efforts to avoid that burden.

Nor does the fact that Respondents subsequently stipulated to provide Petitioner Dima an opportunity in his immigration proceedings to contest removal to the CAR remedy their actions.[4] That stipulation was only entered under threat of active litigation. Petitioners should not be forced to endlessly relitigate whether their detention is justified or their removal proper each time Respondents re-detain them. No evidence has been provided to support that similar process is or will be provided to the other Petitioners, or why detention would be necessary while legitimate due process is administered.

Next, Respondents argue that Petitioners failed to seek prospective injunctive relief in their Petition, and that "Rule 60 does not provide for a 'do over' when a chosen litigation strategy turns out to have been the wrong one." (Doc. 75 at 2) (internal quotation and citation omitted, cleaned up). Respondents correctly note that this Court previously declined to enter prospective injunctive relief as to all the Petitioners because it had not been requested in the Petition and was, at that point, speculative. (Doc. 69 at 14 n. 4).

This misses the point. Respondents conveniently overlook that this Court found that Petitioners' continued detention was unconstitutional, and ordered their release from custody. (Doc. 69). Granting prospective injunctive relief now in light of Respondents' post-judgment actions does not constitute a "do over," but rather is necessary to give meaning to the relief already ordered. An order directing that Petitioners be released from custody is meaningless if Respondents believe themselves free to simply re-detain Petitioners at will and remove them from the United States in violation of their

---

[3] *See* Doc. 10 in CV 26-06095-JPC (S.D.N.Y July 30, 2026).

[4] *See* Doc. 26 in CV 26-06095-JPC (S.D.N.Y August 27, 2026).

constitutional rights. Engaging in this type of "catch and release" conduct does not constitute due process. As this Court has already concluded, "unconstitutional removal cannot cure unconstitutional detention." (*Id.* at 13) (citing *Zadvydas*, 533 U.S. at 689; *Andriasian*, 180 F.3d at 1041).

Recognizing the need for injunctive relief in this case is also within the Federal Rules of Civil Procedure, which provide that a prevailing party should receive any relief "to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c) (emphasis added); *see* 10 Moore's Federal Practice § 54.72 (3d ed. 2011) ("Rule 54(c) permits the awarding of all available relief on a claim when liability on the claim has been established").[5] However, Rule 54(c) includes a prejudice exception: "A court cannot grant relief that was not specifically requested if doing so will prejudice the opposing party." *In re Kimmes*, 528 B.R. 436, 441 (D. Idaho 2015) (citing *Rental Dev. Corp. v. Lavery,* 304 F.2d 839, 842 (9th Cir. 1962)).

No prejudice results to Respondents here, however, as providing due process to Petitioners before removing them to a third country is already constitutionally required. *Andriasian*, 180 F.3d at 1041; *see also Kossov v. I.N.S.*, 132 F.3d 405, 408–09 (7th Cir. 1998)); *Sadychov v. Holder*, 565 Fed. App'x 648, 651 (9th Cir. 2014) ("[S]hould circumstances change such that Azerbaijan is the designated country of removal, the agency must provide Sadychov with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal from Azerbaijan."). Indeed, Respondents have already consented to providing Petitioner Dima with that process,[6]

---

[5] Respondents' arguments that Rule 54(c) is limited by Rule 8(a)(3)'s pleading requirements are also unavailing. (Doc. 75 at 6-7). While "late-in-the-day" relief requests "asserted solely to avoid otherwise certain mootness bears close inspection," such is not the case here. *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1098 (9th Cir. 2001) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (cleaned up). Petitioners' request here is not to "avoid mootness"—indeed, judgment has already been entered—it is to give meaningful effect to the relief already ordered. To the extent Respondents further contest that Rule 54 relief must be "justified by plaintiff's proof," (Doc. 75 at 7), Plaintiff's have offered it (*see* Doc. 72) and Respondents have failed to contest it with evidence of their own.

[6] *See* Doc. 26 in CV 26-06095-JPC (S.D.N.Y August 27, 2026) (stipulation that DHS had "requested reopening [Petitioner's immigration proceedings] to designate the

supporting that doing so inflicts no prejudice upon them.

In short, the Court finds that Respondents' re-detention of several of the Petitioners despite this Court's order that they ***all*** be released constitutes "extraordinary circumstances" justifying reopening this matter under Rule 60(b)(6) to prevent manifest injustice. *Tani*, 282 F.3d at 1168; *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ("Rule 60(b) is meant to be remedial in nature and therefore must be liberally applied."). Given that a third of the Petitioners have now been re-detained—including one (Petitioner Etsang) who Respondents themselves previously conceded was entitled to release (*see* Doc. 21 at 19) (Petitioner Etsang has "brought [a] meritorious *Zadvydas* claim[]" and "Respondents accordingly do not oppose [her] claim[] for release")—the Court further finds that the fear previously found to be speculative has moved beyond plausible and into reality for all of the Petitioners.

Accordingly, the Court will grant Petitioner's Motion to Reopen, and direct that the Clerk of Court reopen this matter.

### B. Injunctive Relief is Uncontested and Warranted

In their Motion, Petitioners seek an order "[e]njoin[ing] Respondents from re-detaining any Petitioner without first providing a reasonable amount of advance notice, as required by the Due Process Clause, and a meaningful opportunity to present a fear-based claim before being removed to a third country, in accordance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231(b)(3)." (Doc. 72 at 18). In their Response (Doc. 75), Respondents are silent as to Petitioners' request for injunctive relief, and the Court thus deems any argument on the merits to be waived. *See N-E-M-B v. Wamsley*, CV-25-00989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition."); *Soleimani v. Larose*, No. CV-25-03082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition

---

[CAR] as an alternative country of removal and to provide Petitioner [Dima] with an opportunity to seek any protection-based relief as to removal to that country, and the immigration judge granted reopening…").

because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"); *cf. Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment."). The Court will thus turn to the contours of an injunction necessary to give meaningful effect to the relief it Ordered on June 29, 2026.

As noted, Petitioner Dima has separately sought written notice of any intended third country to which Respondents intend to remove him, "at least 15 days to allow for a meaningful opportunity to investigate and contest removal to a newly designated third country" and "the opportunity to present a full application of withholding of removal and/or [Convention Against Torture] protection with respect to that country to an immigration judge." (*See* Doc. 26 in CV 26-06095-JPC (S.D.N.Y August 27, 2026). Respondents have stipulated to that request (*id.*), implying that such or similar process satisfies both parties. The Court will therefore amend its June 29, 2026 Order to include the following:

> **IT IS ORDERED** that if Respondents or their agents intend to remove any of the Petitioners to a country other than that specified in their respective removal orders, they are **ENJOINED** from doing so without first providing written notice to Petitioner and Petitioner's counsel of the country to which they intend to remove the Petitioner, and **SHALL NOT REMOVE** the Petitioner from the United States without thereafter providing Petitioner a meaningful opportunity to contest removal to the identified third country, including any applicable appeals.

An amended order and judgment will issue separately.

C. Order to Show Cause

As of the date of this Order, Petitioners Njukeng and Etsang remain detained. Respondents previously conceded that Petitioner Etsang had a meritorious *Zadvydas* claim (Doc. 21 at 19), and the Court found that Petitioner Njukeng was also entitled to release pursuant to *Zadvydas*. (Doc. 69). There does not appear to have been any change in circumstances such that their lawful removal from the United States is now significantly likely to occur in the reasonably foreseeable future,[7] and their present detention thus

---

[7] Unconstitutional removal to third country does not satisfy *Zadvydas*. (Doc. 69 at 13).

appears to be in violation of *Zadvydas*. The Court will therefore order Respondents to show cause why they should not be immediately released.

**IT IS ORDERED:**

(1) Petitioners' Motion to Reopen (Doc. 72) is **granted**.

(2) The Clerk of Court is directed to **reopen** this matter.

(3) The Court's June 29, 2026 Order (Doc. 69) is **amended** to include the following:

> **IT IS ORDERED** that if Respondents or their agents intend to remove any of the Petitioners to a country other than that specified in their respective removal orders, they are **ENJOINED** from doing so without first providing written notice to Petitioner and Petitioner's counsel of the country to which they intend to remove the Petitioner, and **SHALL NOT REMOVE** the Petitioner from the United States without thereafter providing Petitioner a meaningful opportunity to contest removal to the identified third country, including any applicable appeals.

(4) Respondents must **SHOW CAUSE** no later than Friday, September 25, 2026 why Petitioners Njukeng and Etsang should not be released from custody.

(5) Petitioners may file a reply no later than Monday, September 28, 2026.

Dated this 24th day of September, 2026.

Honorable Diane J. Humetewa
United States District Judge